PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AMERICAN STORAGE CENTERS INC., | CASE NO.   5:08CV655 |
| Plaintiff, | |
| | JUDGE DOWD |
| v. | |
| | MAGISTRATE JUDGE PEARSON |
| SAFECO INSURANCE COMPANY OF AMERICA, | |
| Defendant. | **REPORT AND RECOMMENDATION** |

**REPORT FROM FACT-FINDING HEARING HELD MARCH 31, 2009**

The following report is submitted pursuant to Judge Dowd's Order referring this matter to the undersigned Magistrate Judge to conduct a fact-finding hearing to assist Judge Dowd in ruling on Plaintiff's Motion to Strike the Appraisal Process in the above-captioned matter.  *See* [ECF No. 66](ECF No. 66).  Judge Dowd's referral specifically asked that Magistrate Judge Pearson "conduct a hearing to determine the timing, facts and circumstances, and other relevant facts, surrounding Robert Keenan's appraisal award attached to plaintiff's motion, the appraisal award apparently signed by Keenan and Barton, which is attached to Safeco's opposition to plaintiff's motion to strike, and Barton's letter to the Court."  The Court requested that Magistrate Judge Pearson schedule and conduct the hearing and submit a written report as to her factual findings by April 14, 2009, or earlier.  The Court also directed that Robert Keenan and Norman Barton be summoned to testify at the scheduled hearing.

The undersigned conducted a hearing on March 31, 2009.  Both parties were present and

(5:08CV655)

participated.[1]  Attorney Dimitrios Pousoulides represented Plaintiff American Storage Centers, Inc. and attorneys John Travis and Gary Nicholson represented Defendant Safeco Insurance Company.[2]  Robert Keenan (Defendant Safeco's Appraiser), Norman Barton (Umpire), Ken Moon (independent contractor for Umpire), and Cindy Channel (Employee of Plaintiff) appeared as witnesses.  *See* ECF No. 79 (Court's Exhibit and Witness List).

In anticipation of the fact-finding hearing, the Court provided the counsel and witnesses with five (5) different versions of appraisal awards (signed, not signed, etc.) that had been provided to the Court throughout the appraisal process.  During the hearing, the Court referred questioned witnesses about these exhibits.  After the hearing, the Court placed the exhibits on the docket.  *See* ECF No. 80 (Court's Exhibits 1 - 5).

The most salient facts elicited during the hearing follow immediately are summarized later in more detail (where relevant).

> A. **Facts Specifically Relating to the Potential Corruption or Manipulation of the Appraisal Process:**
>
> 1. Norman Barton, the umpire, testified that there was no outside or inside influences that affected his determination of the appraisal award amount. Barton also testified that, on the morning of the hearing, defense counsel John Travis, met him in the hallway outside of the elevators and asked him if there had been any outside influence involved in the appraisal process. Barton responded that there had not been and that he (Barton) has nothing to hide.

---

[1]  In anticipation of the hearing and pursuant to the undersigned's Order, ECF No. 68, counsel for each party filed documents confirming his intention to participate in the hearing, in addition to exhibit and witness lists and briefs.  *See* ECF Nos. 74, 75, 76, 77, 78, & 79.

[2]  Attorney Gary Nicholson was present but did not address the Court or witnesses.

(5:08CV655)

2. Robert Keenan, Defendant's appraiser, testified that throughout the appraisal process, including up to the day of the hearing, no one had spoken with him or said anything to him to encourage him to or insist that he agree with Barton's proposed appraisal award. *See* Safeco Tr. 3 at 31. He also testified that no one, including any attorney, had assisted him in preparing his appraisal report. *See* Safeco Tr. 3 at 47 & 49. Keenan testified that he prepared an appropriate report and still concurs with it as written. Keenan testified that he did not discuss his decision to sign Barton's initial "Appraisal Award" with anyone, including Barton and defense counsel, prior to signing on February 13, 2009. ECF No. 64-2. Keenan also testified that, prior to signing Barton's initial appraisal award, he called defense counsel Gary Nicholson to advise Nicholson that he was going to sign but he did not seek Nicholson's permission or agreement before signing. Keenan testified that he called Nicholson before he signed the "corrected appraisal award" because he was concerned about the potential confusion he might cause by having signed two of Barton's awards. He also wanted to alert Nicholson that by signing the "corrected award" he was committing Safeco to paying a higher dollar amount, $251,808.79 (RCV) rather than $167,261.54 (ACV).

3. Alex Semegen, Plaintiff's appraiser, was not present at the hearing.

4. Gary Nicholson was present but did not testify.

B. **Facts Relating to Compliance with Judge Dowd's Order, Ecf No. 34, Providing Instructions for the Appraisal Process:**

1. Keenan testified that he did not ascend the Plaintiff's (15) buildings to inspect the roofs. He testified that if he had inspected the roofs, then it would have taken him approximately two days to conduct a proper inspection. He testified that because he was unable to inspect the roofs due to snow cover, he does not believe the appraisal constituted proper fact finding. He therefore relied on the engineer's report from EFI Global to make his findings.

2. Barton testified that he inspected the roofs and siding of 11 out of 15 buildings. He testified that he inspected the 11 buildings with an independent contractor, Ken Moon, who was hired by Barton's company. He testified that they both inspected these 11 buildings in approximately 3 hours, spending an average of 16 minutes inspecting each building. He testified that he did not find any damage to the any of the 11 roofs he inspected, but relied on the engineer's report from EFI Global to make his

(5:08CV655)

> findings.

3. Moon concurred with Barton's testimony regarding ascending and inspecting only "10 or 12" roof tops.

C. **Comparison of Judge Dowd's Instructions to Actions Taken**

The following Table compares Judge Dowd's instructions, ECF No. 34, to the results.

| Compliance with Judge Dowd's Appraisal Process, ECF No. 34 ||||
|---|---|---|---|
| **Judge Dowd's Appraisal Instructions** | Norm Barton (Umpire) | Alex Semegen (Plaintiff's Appraiser) | Robert Keenan (Defendant's Appraiser) |
| 1. Selection of Umpire | N/A | Complied *See* ECF No. 28 | Complied *See* ECF No. 28 |
| 2. Reasonably Comparable Appearance Standard | Complied *See* ECF No. 78, Ex. N[3] | Complied *See* ECF No. 78, Ex. D | Did not Comply *See* ECF No. 78, Ex. M[4] |
| 3. Building-by-Building and Siding-by-Siding Analysis | Inspected at least 11 of 15 buildings with Ken Moon. *See* Safeco Tr. 1 at 22 [5] | Complied *See* ECF No. 78, Ex. D[6] | Complied Testimony from Hearing, *See* Tr. 3 at 38 |

---

[3] N.B. Plaintiff's counsel hand delivered an exhibit binder containing Exhibits A - W to the Court at the same time he filed a computer disc, ECF No. 78, with the Clerk's office.

[4] Keenan recommended spot repair of each damaged shingle instead of replacing the entire roof.  Keenan also cited case law in his report that does not comport with Judge Dowd's Order regarding the reasonably comparable appearance standard.

[5] *See also* Safeco Tr. 3 at 69.

[6] The Court is relying on Semegen's statement from his report that he "completed a Building by Building inspection." *See* EFC No. 78, Ex. D, page 1.

-4-

(5:08CV655)

| **Compliance with Judge Dowd's Appraisal Process, ECF No. 34** | | | |
|---|---|---|---|
| 4. Inspection of the roofs | Ascended 11 of 15 roof tops with Ken Moon. *See* Safeco Tr. 1 at 22 | Did not Ascend *See* ECF No. 78, Exs. D & G[7] | Did not Ascend Testimony from Hearing, *See* Safeco Tr. 3 at 38 |
| 5. File Agreed upon Loss Determination of Umpire and One Appraiser | Notified Court on March 6, 2009 (3 weeks after Keenan signed the first appraisal award) *See* Court's Ex. 5 | Did Not Notify Court | Did Not Notify Court |

**D.    More Extensive Summary of Facts Elicited**:

The witness(es) credited as the source for the information provided below is identified by initials following the statement.

1. **June 8, 2007**: Day of the hail storm that damaged the roofs and siding of buildings owned by American Storage Centers, Inc. Plaintiff's counsel played a video during the hearing, which he obtained from youtube.com that allegedly shows footage of the June 8, 2007 hail storm. *See* ECF No. 78, Ex. X. Defense counsel objected to and questioned the authenticity of the video and that it constitutes an extraneous item that the umpire did not consider in his report.

2. **September 29, 2008**: Judge Dowd issued an Order outlining the appraisal process and procedures to be followed. *See* ECF No. 34.

3. **December 18, 2008**: Both appraisers, Robert Keenan ("RK") and Alex Semegen, and the umpire Norman Barton ("NB") met to inspect the buildings owned by American Storage for damage. Also present were Ken Moon ("KM"), who works with Norm Barton, Defense Counsel Gary Nicholson, and an unnamed engineer were also present. The men were not

---

[7] Semegen stated in a letter to Keenan and Barton that he (Semegen) relied on EFI Global's and Gene Smithberger's engineer reports for his roof-top damage assessment. *See* ECF No. 78, Ex. G.

(5:08CV655)

        able to inspect the roofs because of snow cover.  All in attendance returned to Barton's offices to discuss how to proceed.  Keenan, Semegen, and Barton agreed to make future inspections of the property individually.  There was also a short discussion of the difference between the two appraisers' estimate of damages and cost to repair. (witness NB)  Both appraisers and Moon returned to the property the same day and looked at the siding on the buildings.  (All witnesses concurred with this accounting of the events that took place on December 18, 2008; NB, RK, and KM.)

4. **December 18, 2008**: Moon orally reported to Barton his observations regarding the siding upon return to the site.  Moon made no written report of his observations.  (KM)  Moon reported to Barton that he found no damage to the siding.  (NB)

5. **December 30, 2008**: Barton and Moon returned to site and inspected eleven roofs and the siding of eleven buildings out of a total of fifteen buildings.  Barton and Moon accomplished this assessment in about 3 hours.  Barton and Moon ascended each of the eleven roofs and walked the entire length of each roof, each walking one side of the roof, simultaneously.  Barton and Moon then switched sides and walked the entire length of the roof again so both were able to inspect the entire roof (both sides), individually.  Barton and Moon found no damage to any of the eleven roofs they inspected.  Neither of them returned to the property to inspect the remaining four buildings (roofs and siding).  (NB & KM).  Barton agreed with Plaintiff's Counsel that he and Moon spent approximately sixteen minutes inspecting each building, which includes the roof and siding. (NB)  Barton did not rely on Moon's inspection of the roof and siding to make any conclusions regarding damage. (NB)  Barton stated that he brought Moon with him for safety reasons and to increase the speed of the inspection.  (NB)

6. **January 9, 2009**: Appraisal report completed by Plaintiff's appraiser Alex Semegen was issued reflecting cost of repair of $569,399.37.  *See* ECF No. 62-2.

7. **February 7, 2009**: Appraisal report completed by Defendant's appraiser Robert Keenan was issued.  Appraised cost of repair, $14,186.  *See* ECF No. 62-3.  Keenan testified that he produced an appropriate report and concurs with it as written.  He testified that he based his report on EFI Global's report and attached EFI's report to his own.  Even though his report calls for 20% overhead and profit, which is a typo, the calculation of the total remains correct. [10% overhead and profit is correctly included.]

(5:08CV655)

> Keenan testified, in regards to his estimate of $14,000, that he did not think it would be acceptable to Plaintiff, but at the same time, he thought Barton should have accepted his estimate.  Keenan testified he did not view or inspect the roofs because they were covered with snow every time he went to the property to inspect them.  For this reason, he does not believe the appraisal constituted proper fact finding.  Keenan would have preferred to inspect the roofs with Barton and Semegen.  Keenan spent 1 ½ hours at the property on this date in an attempt to inspect the roofs.  The owner of the property was there with him. Keenan believes his report should have been accepted by Barton and that his report follows Judge Dowd's Order, ECF No. 34.  Keenan added "ten and ten"[8] to his estimate because he thought it would make his estimate more palatable, but he would not agree to additional "ten and ten" to Barton's award. Keenan did not know, as Plaintiff's Counsel alleged at the hearing, that the case law cited in his report was contrary to Judge Dowd's Order.  Keenan denied receiving any assistance from an attorney and testified that no one helped him write his report or provided the case law for the report to him; he compiled the case law on his own.  Keenan did not determine the manufacturer of the siding in his report, nor did he investigate the make of the siding.  Keenan did not believe he had to investigate the siding manufacturer because it was already fixed and matched.  Keenan started writing his report sometime prior to February 7, 2009.  (RK)

8.  **February 7 - 12, 2009**: Barton received both Semegen's and Keenan's reports sometime in early February.  Upon receiving them he noted the difference between Semegen's and Keenan's dollar amount of repair costs.  Barton was not surprised at Keenan's reported dollar amount because he, Barton, did not find any damage to the roofs either.  He was not aware that Keenan had not inspected the roofs prior to issuing Keenan's appraisal report.  (NB)

9.  **February 12, 2009**: Appraisal report completed by Umpire Barton.  Appraised cost of repair, RCV - $251,808.79 and ACV - $167,261.54 was issued.  *See* . ECF No. 80-2 (Court's Exhibit 1).  Even though Barton found no damage to the roofs, he testified that Judge Dowd had ordered the appraisers to agree on "hail damage."  He testified he relied solely on

---

[8]  When a general contractor is required to oversee a repair job (usually when more than two trades are involved), 10% is added to the estimate for the general contractor's overhead and 10% is added for the general contractor's profit – hence, "ten and ten."  *See also* Safeco Tr. 3 at 33.

-7-

(5:08CV655)

>
> EFI Global's report to reach his conclusions about the roofing and his own inspection of the siding to determine that repair cost.  He relied on this report because no other engineer's report contained photos.  Barton would disregard any engineer report without photos.  Accordingly, he disregarded the 98 photos given to him by Semegen as they relate to engineer reports.  Barton mailed the report (presumably overnighted by FedEx) to both appraisers, Semegen and Keenan, when he completed it.  The report contained an "Appraisal Award" on page 3 that he signed.  Barton may have called Semegen when he completed the report, he is not sure if he did.  (NB)
>
> 10. **February 13, 2009**: Plaintiff filed the Motion to Strike Appraisal Process.  *See* ECF No. 62.  Mr. Keenan received a copy of Mr. Barton's report with the appraisal award.  Mr. Keenan stated he was surprised at the dollar amount or that he was looking for a "compromise number" because he did not think that the extent of the repairs that Barton proposed were necessary. He expected Barton's award to be a greater amount than his but signed Barton's appraisal award because he felt it would be beneficial to all parties to accept Barton's award.  Keenan claims not to have discussed with Barton his decision to sign Barton's award.  Keenan did call Gary Nicholson with Gallagher Sharp and advised him of Barton's amount and that he was going to sign Barton's appraisal award.  Keenan then signed the award and faxed and mailed it to Barton.  Keenan then faxed the signed appraisal award to Gary Nicholson.  Keenan stated he did not need anyone's permission to sign the award as it was within his power to do so.  (RK)
>
>    Mr. Barton received Keenan's email of the signed appraisal award and testified that he was surprised by the signature. He also testified that he did not speak to Keenan regarding the signed appraisal award or Keenan's own estimate of $14,000.  Barton testified that he spoke to his wife, Mr. Semegen, and Mr. Moon about Keenan signing the appraisal award.  He testified that he called Semegen to tell him that Keenan signed the award and also testified that Semegen stated he was surprised at Keenan's signing.  According to Court's Ex. 3, Barton sent an email to Keenan and Semegen about sending them a "corrected estimate" that did not include ACV.  (NB)
>
> 11. **February 16, 2009**:  Barton mails the corrected estimate to Keenan and Semegen that does not include ACV.  *See* .  ECF No. 80-4 (Court's Ex. 3).  This exhibit was not signed by Barton, but was signed by Keenan.

(5:08CV655)

12. **February 17 or 18, 2009**: Keenan signed the corrected estimate sent by Barton.  He testified he did not discuss signing the corrected estimate with Barton.  He did call Gary Nicholson of Gallagher Sharp to make sure there was no problem with him signing this second award.  Keenan testified that he called Gary Nicholson about signing the second award sheet because he did want to cause any problems by signing a second appraisal award and wanted to make sure by signing it that it would not create confusion.  (RK)

    Barton testified that he received this corrected estimate by fax or email at least before the February 27, 2009 letter, which is discussed next.  (NB)

13. **February 27, 2009**: Defendant filed its Opposition to Plaintiff's Motion to Strike the Appraisal Process.  *See* ECF No. 64.  Mr. Barton sent his first letter to Judge Dowd containing the corrected appraisal award (does not contain ACV).  This letter was signed on behalf of Barton by Barton's secretary who had authority to do so.  The award sheet was unsigned.  Barton could not explain why he did not send the Court a signed copy of the appraisal award or at least inform the Court that Keenan had signed the first appraisal award.  Barton testified that he thought he sent a signed appraisal award to Judge Dowd.  (NB)

    Mr. Keenan testified that he received (ECF No. 80-5) Court's Ex. 4 by email from Barton and responded to him about the same day advising that he, Keenan, would not be amenable to the 10 and 10.  (RK)

14. **March 4, 2009**:  Judge Dowd Orders a fact-finding hearing to be held before Magistrate Judge Pearson "to determine the timing, facts and circumstances, and other releveant facts, surrounding Robert Keenan's appraisal award attached to plaintiff's motion, the appraisal award apparently signed by Keenan and Barton which is attached to Safeco's opposition to plaintiff's motion to strike, and Barton's letter to the Court".  *See* ECF No. 66 at 3.

15. **March 6, 2009**:  Mr. Barton sent a second letter to Judge Dowd.  *See* . ECF No. 80-6 ( Court's Ex. 5).  This letter contains the corrected appraisal award signed by Keenan and Barton.  This is Barton's first notification to the Court of an agreed upon appraisal award.[9]  Barton testified that he sent the letter primarily to provide the Court with the corrected version of the

---

[9]  The Court first learned about an agreed upon appraisal award through Defendant's Opposition to Plaintiff's Motion to Strike.  *See* ECF No. 64.

(5:08CV655)

>appraisal award, *i.e.*, an award reflecting only the RCV.  The Court pointed out to Barton during the hearing that the March 6 letter did not provide any new information that was not contained in the February 27 letter that he sent to the Court.  *See* ECF No. 80-5 Court's Ex. 4.  Barton acknowledged this, but could not explain why he sent the second letter to the Court except that he thought the Court already knew of the agreed upon award.  Barton testified that he was not aware of an issue regarding the appraisal process until Semegen told him of the motion to strike.  Barton also testified that he did not know of the hearing until Plaintiff's counsel sent him an email on March 11, 2009 advising him to appear.  Barton testified that there was no outside or inside influence directing him in calculating the appraisal award amount.  (NB)

E. **Barton and Keenan's Non-date Specific Testimony and Testimony Regarding the Court's Exhibits**

1. **Mr. Barton**: Testified that he had no relationship with either party or counsel prior to being retained as umpire..  He learned about the case when he received a notice from Mr. Semegen that he had been selected by the appraisers as the umpire.  Barton then requested general information from both appraisers.  He testified that he had no contact with the attorneys involved in this case and never met them until the date of the fact-finding hearing.  He testified that Mr. Travis (defense counsel) met him in the hallway at the elevator and spoke to him for 3 or 4 minutes about the issues for the hearing.  Barton said Mr. Travis asked if there was any outside influence and Barton indicated "no" and that I went by the damages and have nothing to hide.  Barton prepared an invoice for his services as umpire amounting to $ 5,281.00.  ECF No. 78, Ex. W.

    Regarding: **Court's Ex. 1 (Plaintiff's Motion to Strike Appraisal, ECF No. 62-4 (Ex. C): Appraisal Report from Norm Barton (Umpire).):** Barton signed award on February 12, 2009 that he sent to the appraisers for review.  ECF No. 80-2.

    **Court's Ex. 2 (Defendant's Opposition to Plaintiff's Motion to Strike Appraisal, ECF No. 64-2 (Ex. 1): Appraisal Award signed and dated by Robert Keenan (Defendant's appraiser) and signed but not dated by Norman Barton.):** Barton received (via mail or facsimile) this version (with RCV and ACV) that was signed by him and Keenan.  Safeco Tr. 2 at 3.  Barton does not recall the fax line on the version of Court's Ex. 2 that he received.

-10-

(5:08CV655)

>
> ECF No. 80-3.
>
> **Court's Ex. 3 (Defendant's Opposition to Plaintiff's Motion to Strike Appraisal, ECF No. 64-9 (Ex. 8):  Letter to Messrs. Semegen & Keenan (dated February 16, 2009) from Umpire Barton transmitting the "Corrected" Appraisal Award only signed by Robert Keenan.)**:  Barton sent out this "corrected version (that does not have the ACV) to Keenan and Semegen.  It was not signed by him and he cannot explain why.  He testified that it is his normal business practice to sign, but did not this time.  He received this corrected version back by email or fax from Keenan, which must have been after February 13, 2009.  ECF No. 80-4.
>
> **Court's Ex. 4 (Judge Dowd's Order referring Case to MJ Pearson, ECF No. 66-2 (Appendix 1): Letter to J. Dowd (dated February 27, 2009) from Umpire Norm Barton with attached "corrected Appraisal Award" not signed by anyone.)**:  A letter Barton sent to Judge Dowd containing the corrected award.  The letter was also sent to all parties, either this exact letter or a separate transmittal.  The appraisal award attached with this letter was unsigned.  Barton testified that this was a mistake.  ECF No. 80-5.
>
> **Court's Ex. 5 (Letter to Judge Dowd dated (March 6, 2009) from Umpire Norm Barton with attached Corrected Appraisal Award signed by Robert Keenan and Norm Barton with neither signature dated.  (Not electronically filed by Barton.))**:  The second letter sent to Judge Dowd that was signed by Keenan and Barton with no ACV.  Barton claims he was out of town when this was sent.  He testified that he does not know the date he signed it, but it must have been scanned and emailed to him and then he sent it back to the office.  ECF No. 80-6.

2. **Mr. Keenan**:  Testified that the law firm of Gallagher Sharp hired him on behalf of Defendant Safeco.  Keenan testified that he communicated with Barton through email or mail and that he has not communicated with Barton since February 27, 2009.  Keenan testified that if he would have inspected the roofs, it would have taken it about two days.  (This statement is in sharp contrast to the 3 hours Barton and Moon spent inspecting the same roofs.)  Keenan testified the he and Mr. Semegen agreed upon

-11-

(5:08CV655)

        Barton as the umpire.  Keenan stated he never worked with Barton before this case. Keenan testified that

| | |
|---|---|
| Regarding: | **Court's Ex. 1 (Plaintiff's Motion to Strike Appraisal, ECF No. 62-4 (Ex. C):  Appraisal Report from Norm Barton (Umpire).)**: Keenon acknowledged having received and reviewed this unsigned document.  ECF No. 80-2; Safeco Tr. 3 at 19 |
| | **Court's Ex. 2 (Defendant's Opposition to Plaintiff's Motion to Strike Appraisal, ECF No. 64-2 (Ex. 1): Appraisal Award signed and dated by Robert Keenan (Defendant's appraiser) and signed but not dated by Norman Barton.)**: Keenon testified that he decided to sign Barton's award that reflected $251,808 (RCV) and $167,000 (ACV) [despite the vast monetary difference between it and his $14,000 recommendation] because he thought "$161,000 [and $251,000] was a far cry better than 565,000." Safeco Tr. 3 at 24; ECF No. 80-3.  Before signing, he told Nicholson that he intended to sign, but he did not seek Nicholson's permission to sign.  Safeco Tr. 3 at 25.  He often works in the evenings and thinks the facsimile time of "19:44" [meaning Keenan sent the fax to Gallagher Sharp at 7:44 p.m.] is "probably right."  Safeco Tr. 3 at 26 - 27. |
| | **Court's Ex. 3 (Defendant's Opposition to Plaintiff's Motion to Strike Appraisal, ECF No. 64-9 (Ex. 8):  Letter to Messrs. Semegen & Keenan (dated February 16, 2009) from Umpire Barton transmitting the "Corrected" Appraisal Award only signed by Robert Keenan.)**: Keenan signed this "corrected version (that does not have the ACV) some time after February 13, 2009 (not February 12, 2009 as typed above his signature. Safeco Tr. 3 at 28 - 29.  He is not sure exactly when he signed but testified that he typically attends to matter quickly.  Safeco Tr. 3 at 28.  Before signing this version of Barton's award – one without the $161,000 ACV amount shown – Keenan called attorney Nicholson and asked if Nicholson had "any problem with him signing."  Nicholson had no problem.  Safeco Tr. 3 at 29 -30.  ECF No. 80-4. |
| | **Court's Ex. 4 (Judge Dowd's Order referring Case to MJ Pearson, ECF No. 66-2 (Appendix 1)**: Letter to J. Dowd (dated |

(5:08CV655)

>February 27, 2009) from Umpire Norm Barton with attached "corrected Appraisal Award" not signed by anyone.): The undersigned did not question Keenon about this specific version because it was addressed to Judge Dowd. ECF No. 80-5.
>
> **Court's Ex. 5 (Letter to Judge Dowd dated (March 6, 2009) from Umpire Norm Barton with attached Corrected Appraisal Award signed by Robert Keenan and Norm Barton with neither signature dated. (Not electronically filed by Barton).):** Keenon did not know if a version of this exhibit had been sent to his attention. Safeco Tr. 3 at 31. ECF No. 80-6.

> *s/ Benita Y. Pearson*
> Benita Y. Pearson
> U.S. Magistrate Judge

Date: April 14, 2009

## OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).