DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

American Storage Centers,       )
                                )       CASE NO. 5:08 CV 655
                Plaintiff,      )
                                )
        v.                      )       MEMORANDUM OPINION AND
                                )       ORDER
Safeco Insurance Company of America,  )   (Resolving ECF 62)
                                )
                Defendant.      )
                                )

## I.  INTRODUCTION

This case involves a dispute over plaintiff American Storage Center's claim for hail damage to fifteen storage buildings made with defendant insurance company.  The Court previously granted defendant Safeco Insurance Company of America's (Safeco) motion to compel appraisal, and ordered the procedure by which the appraisal process was to be completed.  *See* ECF 27 and 34, respectively.

As is apparent from an examination of the docket in this case, the appraisal process was fraught with delay.  More than six months after the Court granted defendant's motion to compel appraisal, plaintiff moved to strike the appraisal process.  *See* ECF 62.

The basis for the plaintiff's motion is that the appraisal process has broken down, both as to the procedure for conducting the appraisal directed by the Court and as to the appraisal process provided for by the insurance policy.  The insurance policy's appraisal process provides that if the appraisers for each party do not agree on the amount of loss, their differences are to be submitted to a mutually selected umpire.  An appraisal award results when there is agreement as

(5:08 CV 655)

to the loss between any two of the three.  The reports provided by the plaintiff in support of its

motion to strike indicates that defendant's appraiser, Robert Keenan, valued the loss at $14,186;

plaintiff's appraiser, Alex Semegen, valued the loss at $569,399.37; and the mutually selected

umpire, Norman Barton, valued the loss at $251,808.79.  *See* ECF 62-2, 62-3, 62-4, and 62-5.

Plaintiff also contends that the Court's orders regarding the procedures for the appraisal process

were not followed.

Safeco opposed plaintiff's motion to strike, contending that an appraisal award had been

reached in accordance with the terms of the insurance policy.  *See* ECF 64.  In support, Safeco

attached an appraisal award for $251,808.79, apparently signed by defendant's appraiser Keenan

and umpire Barton.  *See* ECF 64-2.  Barton's signature is undated, but Keenan's signature is

dated February 13, 2009, the same date plaintiff's motion to strike was filed.  Plaintiff filed a

reply.  *See* ECF 70.

The Court referred this matter to Magistrate Judge Pearson to conduct a hearing to

determine the facts and circumstances surrounding the appraisal award process before the Court

rules on plaintiff's motion to strike.  *See* ECF 66.  The parties filed briefs and exhibits in advance

of the hearing, which was conducted by Magistrate Judge Pearson on March 31, 2009.[1]

Magistrate Judge Pearson subsequently issued a Report and Recommendation (MJP

Report). *See* ECF 85.  Defendant does not object to the facts determined by Magistrate Judge

Pearson in the MJP Report, and only objects to the extent the MJP Report makes legal

conclusions regarding compliance with the Court's orders regarding the appraisal process.

---

[1] The transcript of the hearing was filed at ECF 86.

2

(5:08 CV 655)

Plaintiff also objected to the MJP Report.  *See* ECF 88.  In its objections, plaintiff argues that the facts revealed at the hearing demonstrate non-compliance with the Court's orders, and manipulation, fraud, and corruption of the appraisal process.[2]

## II.  APPRAISAL PROCESS

**A.      Court's Instructions Regarding Appraisal Process**

The Court published a lengthy Order which contained instructions for the conduct of the appraisal process.  *See* ECF 34.  In addition, the Court determined that it would address the issues of depreciation and administration of plaintiff's claim after the loss determination was filed in accordance with the Court's instructions.  *See* ECF 48.  A consolidated summary of the procedure ordered by the Court for the conduct of the appraisal process follows.

1.      Visual Inspection

The two appraisers and the umpire were required to make a visual inspection on a building-by-building basis.  Each party was permitted to have the author of its loss estimate present during the visual inspection by the umpire and appraisers.

The umpire was responsible for coordinating the appraisers for the visual inspection.  If the appraisers and umpire could not complete the visual inspection in one day, another date was to be mutually selected to continue the visual inspection and that date reported to the Court.  *See* ECF 34, pp. 7-9.

_____

[2] Plaintiff's "objections" take the form of an argument that the facts contained in the MJP Report support plaintiff's motion to strike.  *See* ECF 66.

3

(5:08 CV 655)

The disputed insurance claim involves fifteen buildings.  The determination of the loss by the appraisers was to be made and submitted separately for each building.  *See* ECF 34, p. 6.

2.     <u>Reasonably Comparable Appearance</u>

The Court analyzed the Ohio Administrative Code's "reasonably comparable appearance" requirements and the insurance policy's provision regarding "wear and tear," and ruled that any conflict between the "wear and tear" provision of the policy and the "reasonably comparable appearance" standard of Ohio Administrative Code Section 3901-1-54I (1)(b)

> must be resolved in favor of application of the "reasonably comparable appearance" standard, if in fact the item to be replaced has also suffered from "wear and tear".  As a consequence, the two appraisers and umpire will be required to make a judgment call, following a visual inspection building by building, siding by siding, as they evaluate the extent to which replacement is required to result in a reasonable comparable appearance. In that context, the fact that the "item" has also suffered from wear and tear will not negate the necessity for replacement where replacement is necessary for a "reasonably comparable appearance."

ECF 34, pp. 5-6.

3.     <u>Loss Determination</u>

In the event that the appraisers' loss calculations do not agree, the Court instructed that the umpire may recommend a different loss amount than either of the appraisers.  A loss determination, on a building-by-building basis, agreed to by any two is binding.  *See* ECF 34, pp. 5-6.

Upon completion of the process and agreement between any two of the three regarding the loss, "the two appraisers and umpire shall file with the Court" the loss determination upon which the two of them agreed and indicate the amount of loss on a building-by-building analysis. *See* ECF 34, p. 10.

4

(5:08 CV 655)

**B.      Motion to Strike Appraisal Process**

Plaintiff's motion requests that the Court strike the appraisal process and move forward

with a case management plan and a jury trial.  The basis for plaintiff's motion is that defendant's

appraiser, Robert Keenan, and the umpire, Norman Barton, did not follow the Court's

instructions regarding the conduct of the appraisal process, and that the appraisal process had

broken down because the appraisers' and umpire's loss estimates were significantly far apart and

there was no agreement between any two.

In response, defendant contends that an appraisal award was issued in accordance with

the appraisal process and refers to Keenan's agreement with Barton's loss determination, which

was attached to defendant's opposition.  Defendant argues that the Court cannot review or set

aside the appraisal award in the absence of fraud, mistake, or misfeasance.  The agreed upon loss

determination between Keenan and Barton attached to defendant's opposition to the motion to

strike was not previously filed with the Court.

In its reply, plaintiff asserts that it was not previously aware of an agreed award between

Barton and Keenan, and also cites *Edwards v. Transamerica Insurance Group,* 1986 WL 9619

(Ohio App. 10 Dist.), for the proposition that an insured cannot be compelled into appraisal.

**III.  ANALYSIS**

**A.      Report and Recommendation**

Neither party objects to the facts contained in the MJP Report based on the hearing

conducted by Magistrate Judge Pearson.  Defendant's objection states that the facts determined

by Magistrate Judge Pearson are "appropriate and grounded in the evidence elicited at the

5

(5:08 CV 655)

March 31, 2009 hearing." *See* ECF 87.  Defendant objects to the MJP Report only so far as the MJP Report contains legal conclusions as to whether there has been compliance or non-compliance with the Court's orders.  Plaintiff's objections do not take issue with the facts determined by Magistrate Judge Pearson at the hearing, but rather argues that those facts, and the briefs and exhibits filed in connection with the motion to strike and the hearing, demonstrate manipulation, fraud and corruption of the appraisal process.

The Court has reviewed the MJP Report as to the facts found from the hearing and exhibits thereto and adopts the same.

**B.     The Appraisal Process**

In this case, the Court interpreted the insurance policy language and Ohio law and established the procedures for arriving at an appraisal award in this case.  These procedures were designed to ensure a thorough and expeditious process.

There is no question that the Court's orders regarding the conduct of the appraisal process were not followed in a variety of ways, both great and small.  Most importantly for the purposes of plaintiff's motion to strike, the participants failed to follow material aspects of the Court's orders regarding the appraisal process.

1.     <u>Failure to Conduct Visual Inspection and Building-by-Building Analysis</u>

The first material failure is fundamental.  The appraisers and umpire were instructed by the Court to conduct a building-by-building visual inspection and calculate their loss determination on a building-by-building basis.  The need for appraisers and umpire to make a

6

(5:08 CV 655)

visual inspection in order to make an assessment and arrive at a loss determination is obvious, and was expressly recognized by defendant's appraiser.

Defendant's appraiser Keenan testified at the hearing and stated in his appraiser report that he did not inspect the roofs of any of the fifteen buildings.  MJP Report, p. 3; Keenan Report, ECF 62-3, p. 2.  However, in both his hearing testimony and appraiser report, Keenan stated a visual inspection was necessary for a "proper fact finding by the engaged appraisers." *Id.*  In fact, in his appraiser report, Keenan stated that he "hoped that the court will grant a stay on this order and allow the appraisal to be conducted in a manner consistent with proper fact finding by the engaged appraisers, thus allowing [the Court] to make an informed decision." Keenan Report, ECF 62-3, p. 2.

The umpire Barton also did not perform a complete visual inspection as ordered by the Court and identified by Keenan as necessary for a "proper fact finding."  Barton testified at the hearing that he inspected only eleven of the fifteen buildings.  MJP Report, pp. 3-4. Consequently, over 25% of the buildings were not inspected by the umpire.

Plaintiff's appraiser Semegen did not testify at the hearing, but documentation regarding his appraiser report was provided in connection with the hearing.  Semegen stated in his appraiser report that he completed a building-by-building inspection, but indicated in a letter to Keenan and Barton that he relied on engineer reports for roof-top damage assessment.  MJP Report, pp. 4-5.

The appraisers and umpire were also directed by the Court to conduct the visual inspection together.  As the MJP Report reflects, the Court's orders were also not followed in

7

(5:08 CV 655)

this regard, although defendant's appraiser Keenan stated that he would have preferred to conduct the inspection in that manner.  MJP Report, p. 7.

The Court's Order, ECF 34, required the appraisers and the umpire to conduct a visual inspection of the fifteen buildings which are the subject of plaintiff's insurance claim on a building-by-building basis and to render their loss determinations on that same basis.  The Court finds that its orders were not followed.

2.      Reasonably Comparable Appearance

Another material failure to follow the Court's orders directly impacts the loss calculation. The Court analyzed the Ohio Administrative Code's "reasonably comparable appearance" requirements and the insurance policy's provision regarding "wear and tear."   The Court then ruled as a matter of law that, to the extent there is a conflict between the regulatory and the policy language, the conflict must be resolved in favor of application of the "reasonably comparable appearance" standard if the item to be replaced has also suffered from "wear and tear."  Therefore, when evaluating the extent to which replacement is required to result in a reasonably comparable appearance, the Court instructed the appraisers and umpire that the fact the item also suffered from wear and tear will not negate the necessity for replacement where replacement is necessary to provide for a "reasonably comparable appearance."  ECF 34, pp. 5-6. This instruction is material to the loss calculation.

In his report, defendant's appraiser Keenan cited a series of cases and engaged in his own legal analysis regarding the language of the insurance policy.  He determined that, with respect to damaged roof shingles, replacement of a single damaged shingle with one of the same color

8

(5:08 CV 655)

and dimension fulfills the policy requirements[3] and satisfies the "reasonably comparable

appearance" issue.  Keenan concluded that the cases he cited

> provide a basis for the reasonableness of replacing only damaged parts of the property provided a comparable product is available.  In the subject case . . . we are able to replace only the damaged shingles with shingled of like kind and quality to those that are undamaged.  Having to replace the entire roof or even an entire deck due to fading through weatherization is most unreasonable and should be ruled out by the umpire.

*See* ECF 62-3, pp. 7-9.

Keenan applied the same reasoning to the vinyl siding.  His loss calculation is based on

his own interpretation of the insurance policy and the law regarding "wear and tear" and

"reasonably comparable appearance."  Keenan did not apply the Court's legal ruling on this

issue when making his loss determination and did not follow the Court's instruction regarding

"reasonably comparable experience" when "wear and tear" is also involved.

The Court's Order, ECF 34, interpreted the governing insurance policy and regulations

and ruled on the issue of "wear and tear" and "reasonably comparable appearance."  The

appraisers and umpire were required by the Court to apply that ruling when determining the loss

to each building.

---

[3] In its motion to strike the appraisal process, plaintiff asserts that Keenan's appraiser report refers to a provision in the insurance policy not applicable to this matter.  *See* ECF 62, p. 4 of 8.

9

(5:08 CV 655)

The Court finds that its orders were not followed.  In addition to not following the Court's instructions regarding visual inspection, the Court's orders were also not followed regarding the application of the "reasonably comparable appearance" standard by all participants in the appraisal process.[4]  The manner in which the "reasonably comparable appearance" issue is both interpreted and applied makes a material difference in the outcome of the building-by-building loss determinations.

3.    Loss Determination

In order to complete the appraisal award process, agreement by any two of the appraisers and umpire is required on a building-by-building basis.  If an agreement was arrived at, the appraisal award was to be filed with the Court.  *See* ECF 34.

Defendant's appraiser Keenan apparently ultimately agreed to Barton's loss determination.  According to the MJP Report, both deny outside influence in arriving at their loss determinations or agreement.

Despite its efforts to expeditiously conclude the appraisal award process, multiple extensions of time were requested.  The last extended the date for completion of the appraisal process was March 2, 2009.  *See* ECF 61.

The Court first learned of the agreement between Keenan and Barton regarding the loss determination when defendant filed its opposition to plaintiff's motion to strike the appraisal

---

[4] Plaintiff contends that the umpire Barton also failed to follow the Court's Order regarding the "reasonably comparable appearance" in calculating his loss determination. However, it is not necessary for the Court to analyze that issue in order to rule on plaintiff's motion to strike the appraisal process.

10

(5:08 CV 655)

process on February 27, 2009.  *See* ECF 64.  However, although the agreement reflected a date on or about February 13, 2009, the appraisers and umpire did not file the loss determination with the Court as required.  Two days after the Court ordered a fact finding hearing into the appraisal award process, and four days after the Court's deadline for completion of the appraisal award process, the Court received a letter from the umpire dated March 6, 2009, notifying the Court of the agreed upon loss determination.

**C.      Motion to Strike Appraisal Process**

Plaintiff's motion to strike the appraisal process was based on the failure of the process to result in an appraisal award and failure to follow the Court's instructions regarding the appraisal process.  Defendant's opposition attached a previously undisclosed appraisal award that defendant argues should not be set aside in the absence of fraud, mistake, or corruption. Under Ohio law, a court should not generally interfere with an appraisal award absent fraud or manifest mistake.  *Lakewood Manufacturing Company v. Home Insurance Company of New York,* 422 F.2d 796, 798 (6th Cir. 1970); *see also Csuhran v. Merrimack Mutual Fire Insurance Company,* 1994 WL 102248 (Ohio App. 11 Dist.)(fraud, mistake or misfeasance); *Smith v. The Shelby Insurance Group,* 1997 WL 799512 (Ohio App. 11 Dist.)(fraud, mistake or misfeasance).

The Court finds that an appraisal award was not achieved by the appraisal process in this case because the process was not conducted in accordance with the Court's instructions.  The Court issued orders which contained clear instructions regarding the process by which an appraisal award was to be achieved.  The participants failed to comply with material aspects of those instructions.  Specifically, the parties failed to comply with the Court's orders regarding

11

(5:08 CV 655)

visual inspections and with the Court's ruling regarding "reasonably comparable appearance." These instructions were material in determining the loss.  The loss determinations arrived at by the participants are not valid because they were not arrived at in accordance with the Court's instructions.  As a consequence, those loss determinations, which were arrived at contrary to the Court's instructions, cannot form the basis for an appraisal award.

Even assuming for the sake of argument that the agreement between Barton and Keenan resulted in an appraisal award, the Court finds it would be set aside.  Under Ohio law, fraud and mistake are a proper legal basis for setting aside an appraisal award.  *Id.*  The mistake must be of such a character that the appraiser would have corrected it had it been called to his attention. *Lakewood Manufacturing Company,* 422 F.2d at 798; *see also  Smith,* 1997 WL 799512 at *4 (mistake must be "palpably wrong" to set aside appraisal award).

The Court assumes without deciding for the purpose of this analysis that the participants in the appraisal process intended to comply with the Court's orders, and that their failure to do so was not a deliberate contempt of the Court's orders.  Had the participants in the appraisal process been consciously aware that their conduct of the appraisal process was contrary to the Court's orders, they most certainly would have corrected their actions.  Accordingly, the Court finds that even if the agreement between Barton and Keenan resulted in an "appraisal award," the award was based on a mistake by the participants because the loss determinations were not arrived at in accordance with the Court's instructions, and is therefore properly set aside.  *Id.*

12

(5:08 CV 655)

### IV.  CONCLUSION

Based on the analysis contained herein, plaintiff's motion to strike the appraisal process is GRANTED.  Discovery is open, and shall be concluded by June 30, 2009.  Summary judgment motions on the issue of punitive damages may be filed by July 10, 2009, responses by July 20, 2009 and replies by July 27, 2009.  This case is scheduled for trial on a standby basis for the two-week period beginning November 2, 2009.  A Trial Order will be separately published.

IT IS SO ORDERED.


  May 14, 2009                               s/ David D. Dowd, Jr.
Date                                      David D. Dowd, Jr.
                                          U.S. District Judge

13